UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

| | |
|---|---|
| United States of America, | File No. 22-CR-86-2 (JWB/ECW) |
| Plaintiff, | GABRIEL LEMOINE'S TRIAL BRIEF |
| v. | |
| Gabriel Lemoine, | |
| Defendant. | |

_____

COMES NOW Defendant Gabriel Lemoine, by and through his counsel, the undersigned, and pursuant to the Second Amended Trial Order (Doc. No. 114) hereby submits the following trial brief.

**a. Trial Counsel for Defendant**

Andrew M. Irlbeck; 332 Minnesota Street, Suite W1610, Saint Paul, Minnesota, 55101; (612)-986-3895; andrew@irlbecklaw.com.

**b. Length of Trial**

Defendant Lemoine estimates that the trial will last three to four days, including jury selection and charge.

**c. Facts**

Defendant is not guilty of all Counts, as the evidence will show that Mr. Lemoine had no knowledge of his co-Defendant's drug distribution activities, and never entered into any agreement to participate in drug distribution, nor possessed any controlled substances.

1

On April 21, 2022, law enforcement executed search warrants at various locations in the metro area. The evidence will show that co-Defendant Martinez had been in the United States, residing in Minnesota, for approximately one year at the time of his arrest. Mr. Martinez had traveled to the United States directly from Mexico. Mr. Martinez was not lawfully inside the United States at any relevant time.

The evidence will show that Mr. Lemoine, a lawful, long-term permanent resident of the United States who had never been arrested in his life prior to this case, traveled to Minnesota from his home in Detroit, at the behest of his co-Defendant, who asked for Lemoine's help in setting up a cleaning business here. The two had men met years prior when Mr. Martinez lived (again illegally) in Detroit.

Prior to the arrests and search warrants, law enforcement conducted a recorded meeting with Mr. Martinez via an informant. Mr. Lemoine was not present at the meeting, is not heard on the recording, and sat in the passenger seat of Martinez's car outside the café. In the recording of the meeting at Keys Café, Martinez refers to only to himself as being responsible for obtaining drugs from storage, storing them in his own car, at his own apartment, and delivering them himself. Martinez states "I just came from the storage." … It's ready but I just put it in another car." … "I'm gonna be ready when you come." … "I'll meet you there." (Body Wire at 0:17:15-0:20:15.)

Subsequently, law enforcement conducted a controlled buy of one pound of methamphetamine from Mr. Martinez. This occurred in the informant's car. Mr. Lemoine was again not present inside the car, and was seated in the passenger seat of Martinez's vehicle. The controlled buy was not recorded.

Law enforcement conducted subsequent tracking and surveillance of Martinez, Lemoine, and the gold Chevy Tahoe driven by Martinez to both the meeting and the controlled buy. The vehicle was tracked around the metro for a month, with occasional in-person surveillance by law enforcement. However, when Mr. Martinez was surveilled meeting his drug cartel affiliates at a local bank to launder money and pay him, Lemoine was again not present. He was not even in the car outside. At that meeting, other known drug traffickers drove the tracked Tahoe. Lemoine was nowhere to be seen.

When law enforcement executed the search warrants, the only large quantity of drugs in the shared apartment in Woodbury were concealed in a cabinet in a common area, and were not in plain sight. All remaining drugs and money were in Martinez's safe in Martinez's bedroom. Similarly, law enforcement found a large amount of cash in Martinez's safe. No drugs or large amounts of cash were found in Lemoine's bedroom, nor on his person. Notes that appear to be drug debts were also found in Martinez's room, as well as money transfer receipts. No such information was found in Lemoine's room, and Lemoine was not found in possession of any drugs.

At the same time, agents also executed search warrants on two storage units. One contained 90 pounds of alleged methamphetamine wrapped in opaque packaging inside of a bag. The other unit contained 28 pounds of alleged cocaine, inside boxes, in the trunk of a car. That car, a 2001 Oldsmobile, had been transferred into Lemoine's name shortly beforehand.

In the recording of the meeting with the informant, Martinez referred to only to himself as being responsible for obtaining drugs from the storage unit, storing drugs in a

car, at his own apartment, and delivering them himself. Martinez states "I just came from the storage." … It's ready but I just put it in another car." … "I'm gonna be ready when you come." … "I'll meet you there." (Ex. 1 to Motion to Admit Meeting.) Martinez never mentions Lemoine or receiving any assistance from Lemoine. The informant never met Lemoine nor identified him.

Martinez also discussed purchasing a vehicle, a Yukon, from the informant. Lemoine believed the meeting Martinez was to have at the Café was solely about purchasing a used car. He does not indicate Lemoine has any involvement whatsoever, nor knowledge.

Similarly, there will be no direct evidence in this matter that Lemoine had any knowledge of Martinez's drug dealing activities. Lemoine never saw Martinez with any large quantities of cash or drugs. Lemoine was never documented to have discussed drugs or large amounts of cash with anyone. Lemoine was never documented as having any knowledge of the drugs.

What Lemoine did do was unwittingly put two storage units, one apartment, and possibly one inoperable car in his name. The apartment in Lemoine's name contained no evidence. The Woodbury apartment was in another unwitting participant's name, as were the tracked Tahoe, and a Jeep, which was also used in the scheme. There will be no direct evidence that Lemoine had any knowledge of what Martinez intended to use the storage units, and car for.

Mr. Lemoine has subpoenaed Mr. Martinez, his co-defendant, to testify at trial. Mr. Martinez has moved to quash that subpoena.

### d. Unresolved Issues

The parties disagree about certain jury instructions to be provided, as well as the admissibility or exclusion of certain evidence. All of those issues are briefed thoroughly in separate motions and memoranda, such as Defendant's Motion *in Limine* to admit the recording of the meeting with the informant, and various motions *in limine* to exclude certain evidence and references.

At the close of evidence, Mr. Lemoine anticipates he will move for judgment of acquittal. Under Rule 29, "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed.R.Crim.P. 29(a). Judgment of acquittal is required "if a reasonable jury viewing the evidence in this might must have a reasonable doubt about the existence of an essential element of the crime." *United States v. Hernandez*, 301 F.3d 886, 889 (8th Cir. 2002). Unless there is "substantial evidence" supporting a guilty verdict, judgment of acquittal is required. *United States v. Cruz*, 285 F.3d 692, 697 (8th Cir. 2002).

Mr. Lemoine anticipates separately briefing his Rule 29 motion once the Government has rested its case.

Trial is expected to last three to four days. Defendant anticipates his witnesses will need less than one day. The Government may seek to call several expert witnesses. Two of those experts are the subjects of motions *in limine*. The remainder are not.

Respectfully Submitted,

**ANDREW IRLBECK LAWYER CHTD.**

Dated: May 12, 2023

/s/ Andrew M. Irlbeck
Andrew M. Irlbeck, #392626
332 Minnesota St., Ste. W1610
St. Paul, MN 55101
Phone: 612-986-3895
Fax: 651-223-5179
andrew@irlbecklaw.com
ATTORNEY FOR GABRIEL LEMOINE