## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Crim. No. 22-86(2) (JWB/ECW) |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL** |
| Gabriel Eduardo Lemoine, | |
| Defendant. | |

Thomas M. Hollenhorst, Esq., United States Attorney's Office, counsel for Plaintiff.

Andrew M. Irlbeck, Esq., counsel for Defendant Lemoine.

This matter is before the Court on Defendant Gabriel Eduardo Lemoine's Motion for Judgments of Acquittal pursuant to Federal Rule of Criminal Procedure 29 (Doc. No. 214), and Motion for New Trial pursuant to Federal Rule of Criminal Procedure 33 (Doc. No. 216). The United States of America (the "Government") opposes the motions. (Doc. No. 218.)

After careful consideration of the testimony and other evidence received at trial, and respecting the thoughtful deliberation of the jury, Defendant's motion for acquittal is granted and the motion for a new trial is conditionally granted. Overturning a jury verdict should be a rare occurrence. But here the record presents a rare case. Reduced to the core, the question presented is whether the prosecution produced sufficient evidence from which a reasonable jury could have concluded that Defendant *knowingly* aided and abetted the crimes charged. While direct evidence of Defendant's knowledge is not

required, more than mere speculation is. Here, too large a logical leap is required to conclude from the totality of evidence, all of which was circumstantial, that Defendant knew he was aiding in the commission of a crime or criminal activities. A ruling of acquittal is warranted.

## BACKGROUND

In February 2022, law enforcement received information from a confidential informant ("the informant") about distributions of methamphetamine, cocaine, and marijuana in St. Paul, Minnesota, and the surrounding metropolitan areas. In the months that followed, law enforcement worked with the informant to further investigate individuals who appeared connected to the illegal narcotics organization.

As part of the investigation, the informant met with a person referred to as "Nephew" (later identified as Manuel Denis Martinez) on two occasions—first at a café on March 2, 2022, and second at an Applebee's parking lot on March 3, 2022. A controlled drug buy took place during the second meeting whereby Martinez exited his vehicle (a gold Chevy Tahoe), entered the informant's vehicle, and sold approximately one pound of methamphetamine to the informant.

From investigation and surveillance, officers learned that the gold Chevy Tahoe made frequent trips between a Burnsville apartment, an apartment in Woodbury, and two storage units—one in Woodbury and the other in Lake Elmo, Minnesota. No evidence was introduced that Defendant ever drove the Tahoe. Officers learned that Martinez rented the apartment in Woodbury and was living there with Defendant. They also learned that the two storage units were rented in Defendant's name.

On April 21, 2022, law enforcement executed search warrants for the two apartments and the two storage units. Methamphetamine was found inside a plastic bag in a lower kitchen cabinet in the Woodbury apartment and inside Target shopping bags in the Lake Elmo storage unit. Cocaine was seized from the trunk of a car stored in the Woodbury storage unit.

Martinez and Defendant Lemoine were charged with conspiracy to distribute methamphetamine and cocaine, distribution of and/or aiding and abetting the distribution of methamphetamine, and possession of and/or aiding and abetting possession with intent to distribute methamphetamine and cocaine. Prior to trial, Martinez pled guilty to the distribution charge.

At trial, the Government proceeded with the conspiracy charge and focused the remaining charges on aiding and abetting, rather than distribution or possession. The Government's evidence included the testimony of two law enforcement agents and an employee from the Lake Elmo storage unit, various exhibits, and photos taken at the Woodbury apartment and the two storage units.[1] All evidence on aiding and abetting was circumstantial. The evidence included:

- Defendant met Martinez through a friend in or around 2006 when they both lived in Detroit. No direct evidence was presented that Defendant knew Martinez to be involved in any illegal activity at that time, and Defendant denied any such knowledge.

- Approximately seven to ten years later, Martinez left Detroit and moved to Mexico. Defendant testified that at some time while living in Mexico, Martinez was without a job and reached out to him. As a friend, Defendant sent a small

---

[1] Defendant also presented evidence at trial. He called several character witnesses, introduced photos, and provided testimony.

amount of money to Martinez three times, totaling approximately $200 at most.

- Sometime in the summer of 2021, Martinez returned to the United States and moved to Minnesota.

- In January 2022, Defendant left Detroit where he had been working at another friend's cleaning company, and moved in with Martinez at an apartment in Woodbury. Martinez's friend Mr. Luna also was living at the Woodbury apartment. Martinez had told Defendant that Luna and others were working together in a seasonal business as roofers. Defendant testified that Martinez invited him to Minnesota to possibly start a cleaning business with him. At the time, Defendant needed a car. Martinez had an extra car that he offered to Defendant and said he could pay for it later. The car was a 2001 Oldsmobile.

- Defendant had no criminal record, had never been arrested, was a lawful resident of the United States, had a social security number, and was previously lawfully employed.

- Prior to Defendant's arrival in Minnesota, the 2001 Oldsmobile was transferred into Defendant's name. The signature on the transfer documents does not appear to match other samples of Defendant's signature and the address listed was not Defendant's known address.

- On January 31, 2022, Defendant rented a storage unit in Lake Elmo to be used as a shared storage space for Martinez and Defendant to store cleaning supplies and tools, and for Luna to use for storing furniture. Luna was in the process of moving out of the Woodbury apartment. When filling out the rental agreement, Defendant provided his correct home address from Detroit, which was also his parents' address.

- Ms. Jennifer Graves, an employee at the Lake Elmo storage unit facility, estimated seeing Defendant access the storage facility fifteen to twenty times between January 31 and April 15, 2022, sometimes wearing a high-visibility work vest. She could not identify on which days she saw Defendant, except for two days, January 31 and February 1, 2022. She did not remember seeing Defendant access the storage facility on March 3, 2022, the date of the informant's controlled buy.

- Records showed that Defendant's access code was used to enter the Lake Elmo facility on twenty-seven occasions from January 31, 2022, through April 15, 2022. The records do not show whether it was Defendant or someone else who used the access code.

4

- Defendant testified that he did access the storage unit multiple times in February to bring the following items either to or from the unit: shoes, a TV, a mattress, a table, chairs, ottoman, power washer, and a weed-whacker. Defendant testified that the access code was shared with Martinez and others whom he thought were working with Martinez in the roofing business, including Luna. Defendant helped move some of Luna's furniture to the storage unit in February.

- Sometime after Defendant arrived in Minnesota, the Oldsmobile that Martinez had transferred to him became inoperable. On February 16, 2022, Defendant rented a storage unit in Woodbury for the purpose of storing the Oldsmobile. The lease included an addendum that permitted him to store a vehicle in the unit. Defendant's unrebutted testimony was that he moved the car into the Woodbury storage unit to avoid having the vehicle towed from their apartment complex parking lot.

- From March 16, 2022, through April 9, 2022, Defendant's access code was used to enter the Woodbury facility on eight occasions. The records do not show whether it was Defendant or others who used the access code, and no evidence was presented on the subject. Defendant testified that the access code had been shared with Martinez and others.

- On February 18, 2022, Defendant rented his own apartment in Burnsville, Minnesota. He testified that the Burnsville apartment was rented so that he and Martinez would have a residence apart from the Woodbury apartment where other seasonal workers by then also resided.

- On March 2, 2022, according to Defendant, Martinez drove to a café in downtown St. Paul to meet with a friend about a new vehicle Martinez might purchase. Defendant said he rode along so that he could see downtown St. Paul for the first time. Defendant testified that he did not go into the café with Martinez when Martinez met with his friend.

- On March 3, 2022, Defendant stated he had gone job-hunting, including at a delivery company. He testified that it was typical to wear a high-visibility work vest when he looked for jobs. After job-hunting, he drove himself to the local post office to obtain a money order so that he could pay the Burnsville apartment rent.

- Later on March 3, 2022, Defendant said he was anxiously awaiting Martinez to pick him up from the Woodbury apartment[2] to go to make their rent payment at

---

[2]     There was no evidence presented as to why Defendant was at the Woodbury apartment at that time on that day.

the Burnsville apartment before the office closed. Defendant's unrebutted testimony was that Martinez picked Defendant up in the gold Chevy Tahoe, drove to an Applebee's parking lot, and told Defendant that he was meeting with the same friend that he met with on March 2 to talk about a different vehicle to purchase. Both Defendant and Martinez were wearing high-visibility work vests at the time. Defendant stated he was wearing the high-visibility vest because he went looking for a job earlier that day.

- At Applebee's, Martinez exited the Tahoe, entered the informant's vehicle, and sold the informant approximately one pound of methamphetamine. The controlled buy between Martinez and the informant was audio recorded. Neither of them mentioned Defendant or otherwise suggested he had any involvement with the transaction. Instead, Martinez referred to himself as the person who stored and retrieved the drugs.[3] While this transaction occurred, Defendant remained in the passenger seat of the Tahoe. No evidence was presented on where or how Martinez concealed the drugs used in the controlled buy, and no evidence was presented that Defendant was aware of the drugs.

- Approximately thirty minutes before that controlled buy, Defendant's access code was used to enter the Lake Elmo storage facility where methamphetamine was later seized. No evidence was offered as to who actually used the code and entered the storage unit that day, except Defendant denied his presence. After the controlled buy, law enforcement tracked the Tahoe to the Burnsville apartment, where Martinez and Defendant exited the vehicle, went inside the rental office, and paid the apartment rent.

- On April 21, 2022, pursuant to a search warrant, law enforcement searched the Woodbury apartment. They found a bag containing approximately two pounds of methamphetamine in the back of a lower kitchen cabinet inside a white plastic bag. They also found approximately $41,000 in cash, numerous financial receipts, and suspected drug ledgers in a safe inside Martinez's bedroom. Defendant's unrebutted testimony was that he was unaware of the contents of Martinez's safe, and no evidence of Defendant's knowledge of the safe contents was presented. For example, no evidence was presented that the safe was ever open in the plain sight of Defendant, or that the contents were ever discussed. In Defendant's Woodbury bedroom, law enforcement found the title to the 2001 Oldsmobile and some other

---

[3]     The Government asserts that Defendant "served as a look-out for the drug transaction," but the assertion lacks evidentiary support. Neither the informant nor Martinez referred to or described Defendant as a look-out, and no trial evidence made such a reference. Defendant testified that while Martinez met with the person (the informant), he remained in the Tahoe texting on his phone.

documents.[4]

- On April 21, 2022, pursuant to a search warrant, law enforcement seized approximately 90 pounds of methamphetamine from two Target shopping bags located in the Lake Elmo storage unit. The Government asserts that the Target shopping bags were "in plain view" in the storge unit. (Doc. No. 218, Gov't Resp. 3.) As one can see from a photograph taken of the Lake Elmo storage unit, various other items were also in the storage unit and the Target bags were not prominent. (*See* Gov't Ex. 21, pictured below.) No evidence was presented indicating when the Target bags or the drugs were placed there or by whom. Defendant testified that at the times he accessed the storage unit he did not see Target shopping bags present, and no evidence established the presence of the Target bags or drugs at any times Defendant accessed the Lake Elmo storage unit.



---

[4]     Some documents recovered contained names of people law enforcement suspected were involved in drug distribution. No evidence established that Defendant knew of any suspected connection between any documents and drug distribution.

- On April 21, 2022, pursuant to a search warrant, law enforcement seized approximately 11 kilograms of cocaine from the trunk of the 2001 Oldsmobile that was stored in the Woodbury storage unit. Most of the cocaine was wrapped in bricks and inside boxes in the trunk, with books stacked on top. Officers also seized approximately two ounces of cocaine powder from the trunk in a more visible bag. A license plate belonging to someone else also was found in the car. None of Defendant's belongings were in the car. Again, there was no evidence of when the drugs or other contents were placed there or by whom to assess Defendant's possible degree of awareness. The only items in the storage unit at the time were the Oldsmobile and a microwave oven.

- One set of keys for the Oldsmobile were found in the bedroom where Defendant sometimes slept in the Woodbury apartment. Defendant testified that a second set of keys for the Oldsmobile were kept in the Tahoe where others could access them.

- Defendant testified that he did not know about any of the drugs seized in this case, did not know pre-arrest that Martinez was involved in drug trafficking, and did not know that Martinez was meeting someone on March 3, 2022, at the Applebee's to sell drugs.

- Defendant also testified that while he was living in Minnesota, he did do cocaine on one occasion with a person he had met through a dating app. That person provided Defendant with the cocaine used and there was no evidence linking it to the seized narcotics.

After the Government's case-in-chief, Defendant sought acquittal on all charges. The Court granted Defendant's motion in part, as to the conspiracy charge (Count 1).

After a multi-day trial, a jury convicted Defendant on three of the remaining four counts—aiding and abetting distribution of methamphetamine (Count 2), aiding and abetting possession with intent to distribute methamphetamine for methamphetamine seized in a storage unit (Count 4), and aiding and abetting possession with intent to distribute cocaine for the cocaine seized in a storage unit (Count 5). The jury found

Defendant not guilty of aiding and abetting possession with intent to distribute methamphetamine for the methamphetamine discovered in the lower kitchen cabinet in the Woodbury apartment (Count 3).

Defendant now moves for judgment of acquittal (and renews his earlier motion for judgment of acquittal) on the three counts of conviction. He also requests a conditional order for a new trial if the Court grants his motion. If the motion for acquittal is denied, Defendant requests that a new trial be granted without condition.

## DISCUSSION

## I.     MOTION FOR ACQUITTAL

### A.     Legal Standard

Federal Rule of Criminal Procedure 29 provides that "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). When a district court considers a motion for acquittal, it does so with "very limited latitude." *United States v. Thompson*, 285 F.3d 731, 733 (8th Cir. 2002). The credibility of the witnesses or weighing of the evidence should not be assessed. *Id.* The evidence is to be viewed in the light most favorable to the jury's verdict, granting the government the benefit of reasonable inferences. *United States v. Gomez*, 165 F.3d 650, 654 (8th Cir. 1999). Acquittal is available "only if there is no interpretation of the evidence that would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt." *Id.* If there is an interpretation of the evidence that would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt, the verdict must be upheld. *United States v. Espinoza*,

885 F.3d 516, 520 (8th Cir. 2018).

### B.    Analysis

Defendant argues that the evidence adduced at trial was insufficient to sustain a

conviction on any count, and that acquittal on the jury's guilty verdicts must be entered

because "the jury's verdicts can be based only on impermissible speculation and

conjecture, and not on reasonable inferences drawn from the actual evidence at trial."

(Doc. No. 215, Def.'s Mem. in Supp. of Mot. 3.)

To convict Defendant of aiding and abetting distribution of methamphetamine or

aiding and abetting possession of methamphetamine and cocaine, the Government's

burden was to prove beyond a reasonable doubt that Defendant associated himself with

the unlawful venture, participated in it "as something [he] wished to bring about," acted

in such a way as to ensure its success, and shared the criminal intent of the principal.

*United States v. Hernandez*, 301 F.3d 886, 890 (8th Cir. 2002); *see also United States v.

Posters 'N' Things Ltd.*, 969 F.2d 652, 661–62 (8th Cir. 1992). There must be knowing

participation in the activity. *United States v. Roan Eagle*, 867 F.2d 436, 445 (8th Cir.

1989).

Here, there is no direct evidence that Defendant ever knew that Martinez or any

other member of the alleged conspiracy possessed methamphetamine or cocaine or sold

or distributed those narcotics to anyone. There is no direct evidence that Defendant

knowingly acted for the purpose of aiding Martinez or anyone in committing the crime of

possession with intent to distribute, or that Defendant intended that methamphetamine or

cocaine be delivered to another person. The Government provided no evidence of when

the drugs were placed at any location to assess whether Defendant was in a position to know of their existence, let alone knowingly aid in their distribution. This point is all the more poignant considering that there were multiple persons with access to every location where drugs were found and seized. There is no evidence that Defendant was more than merely present at the March 3, 2022 "controlled buy" between Martinez and the informant in the Applebee's parking lot, and there is no evidence that Defendant had any awareness of the narcotics at the time.

While direct evidence is lacking, the circumstantial evidence is equally unavailing. The entirety of the Government's circumstantial evidence—including the evidence that Defendant was living in the same apartment as Martinez, the storage units were in Defendant's name, the Oldsmobile was in Defendant's name, and the discovery of money, drug ledgers, and other papers found in Martinez's room and some other paperwork with other people's names on it found in Defendant's room—taken all together, at best, raises suspicion. Suspicion is only conjecture and not a reasonable inference of Defendant's guilt. *See Hernandez*, 301 F.3d at 890–92 (affirming judgment of acquittal on nearly identical grounds).[5] "[C]onjecture is something less than an inference reasonably drawn from the evidence." *Id.* at 890 (quotations omitted).

Upon granting Defendant's motion for acquittal as to the conspiracy charge after

---

[5]      In *Hernandez*, the defendant lived with her boyfriend drug dealer, she was with him when he made drug sales, incriminating items were found in their home, and she registered cars that he used in her name. The circumstantial evidence was deemed too speculative to sustain the jury's verdict. *See id.* at 893.

the Government rested, the remaining charges only "narrowly" survived at that time,
pending presentation of the defense case. The case was notably "borderline" because of
the proof of knowledge required, and the paucity of evidence presented, to sustain the
aiding and abetting charges. (Doc. No. 204, 6/5/23 Order 4.) While various evidentiary
points were considered,[6] "[o]ther facts introduced in the Government's case suggest[ed]
Defendant Lemoine might have been deceived and was unknowingly involved in a
narcotics scheme." (*Id.*) Defendant has renewed his motion for acquittal post-verdict.
Based upon what is now a complete record, the totality of the evidence presented taken
together was simply too attenuated to reasonably infer Defendant's knowledge of the
criminal activity.

Concluding that Defendant knew the Oldsmobile was going to be used and was in

---

[6]      The evidence included:

> "[T]he usage of Defendant Lemoine's key code at a storage facility half an
> hour prior to the controlled buy, where substantial methamphetamine was
> later seized from Defendant Lemoine's unit; Defendant Lemoine had rented
> storage units for others to use, those others have been implicated as drug
> traffickers during the trial, and large amounts of narcotics were later
> confiscated from those storage units; Defendant Lemoine cohabited an
> apartment with the former co-Defendant Martinez where substantial cash of
> over $40,000 and potential drug notes were found in Martinez's bedroom,
> and close to two pounds of methamphetamine was discovered in the lower
> kitchen cabinets; and the observation that both Defendant Lemoine and
> Martinez were wearing fluorescent green high-visibility vests at the time of
> the controlled purchase, which was explained by agent testimony as a
> potential ruse."

(6/5/23 Order 4.) The referenced agent was speaking in general terms about the nature of
drug trafficking operations, and not specifically about Defendant, when testifying about
the use of disguise by operatives.

fact used to store cocaine required speculation. Concluding Defendant was at the storage unit just prior to the March 3rd controlled buy, when others had access and when no evidence identified him as being there on that date required speculation. Concluding Defendant was a "look-out" at the controlled buy required speculation. Concluding Defendant saw the one pound of methamphetamine Martinez sold to the informant required speculation. Concluding Defendant knew of the methamphetamine in the white plastic bag in the apartment kitchen lower cabinets, knew of drug trafficking based on other items in the apartment, knew of the methamphetamine in the Target bags in the one storage unit, or knew of the cocaine in the trunk of the Oldsmobile in the other storage unit, all required speculation.

No witness ever saw Defendant possess any of the seized drugs, be knowingly near any such drugs, handle drug monies, or talk about any drugs or drug trafficking related information. No evidence showed that Defendant ever had contact with any of the drug trafficking evidence, or even knew of it, and most of this evidence was found in a locked safe in Martinez's room. As stated previously, "[t]here was no evidence the Defendant Lemoine was aware of the drugs." (*Id.* at 5.)

The leap from the various points of evidence presented by the Government to Defendant's guilt was speculative, and too large a leap. Compounded speculations, however many, do not make a reasonable inference. The Government's burden was to prove, beyond a reasonable doubt, that Defendant had knowledge of the drugs and had knowledge of the distribution for Defendant to have knowingly aided and abetted those crimes. Mere presence at the scene of a crime or association with others committing a

crime is not sufficient. *See Hernandez*, 301 F.3d at 891. As in *Hernandez*, the link between the evidence of Defendant's actions—living with Martinez, having the storage units and Oldsmobile in his name, and entering the storage units on occasion—and the drug possession and distribution "is too attenuated." *See id.* at 892–93 (finding Hernandez's activities might be "sufficient to raise speculation that she shared . . . criminal intent" but stating "there is a critical line between suspicion of guilt and guilt beyond a reasonable doubt"). In other words, speculations do not establish guilt beyond a reasonable doubt.

For these reasons, Defendant's motion for judgment of acquittal on Counts 2, 4, and 5 is granted.[7]

## II.    MOTION FOR NEW TRIAL

Defendant moves the Court for a new trial under Federal Rule of Criminal Procedure 33 on three grounds: (1) insufficiency of the evidence; (2) improper exclusion of certain statements; and (3) controlled substances left in the courtroom well during jury instructions.

"Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "The decision to grant or deny a motion for a new trial based upon the weight of the evidence is within the sound discretion of the trial court." *United States v. Campos*, 306 F.3d 577, 579 (8th Cir. 2002). The court "can weigh the evidence, disbelieve witnesses, and grant a new trial

---

[7]    Because acquittal is required, Defendant's additional argument relating to the willful blindness jury instruction is not addressed.

even where there is substantial evidence to sustain the verdict." *White v. Pence*, 961 F.2d 776, 780 (8th Cir. 1992) (quotations omitted). "A district court may grant a new trial for insufficiency of the evidence only if the evidence weighs heavily enough against the verdict that a miscarriage of justice may have occurred." *United States v. Lacey*, 219 F.3d 779, 783 (8th Cir. 2000) (quotations omitted).

Defendant's motion is denied on grounds two and three. Regarding the excluded statements, the prior decision that the statements were hearsay and no exception applied stands. Regarding the packaged drugs present in the well during jury instructions, Defendant did not object at the time as to their presence. Moreover, the drugs as packaged were admitted evidence, had already been shown to the jury as such at other points in the trial, and therefore, any error would be harmless.

However, regarding the first ground, for the same reasons that support granting Defendant's motion for judgments of acquittal, there was insufficient evidence to convict Defendant on Counts 2, 4, and 5, and a miscarriage of justice will occur if the jury's verdict is allowed to stand. If this order of acquittal on Counts 2, 4, and 5 is appealed and overturned, Defendant should be granted a new trial in the interest of justice. Therefore, Defendant's motion for a new trial is conditionally granted.

## ORDER

Based on the file, records, and submissions, and for the reasons stated above,

**IT IS HEREBY ORDERED** that:

1.     Defendant Lemoine's Motion for Judgments of Acquittal (Doc. No. 214) is **GRANTED**. Judgment of acquittal shall be entered consistent with the Court's ruling

with respect to Counts 2, 4, and 5; and

    2.    Defendant Lemoine's Motion for New Trial (Doc. No. 216) is

**CONDITIONALLY GRANTED** in the event that the judgments of acquittal are

vacated or otherwise reversed on appeal.

        **LET JUDGMENT BE ENTERED ACCORDINGLY.**


Date: August 14, 2023                *s/ Jerry W. Blackwell*
                                        JERRY W. BLACKWELL
                                        United States District Judge